# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ASSURANCE COMPANY OF AMERICA, AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and NORTHERN INSURANCE COMPANY OF NEW YORK,<br><br>        Plaintiff,<br>vs.<br><br>IRONSHORE SPECIALTY INSURANCE COMPANY and DOES 1 through 20, inclusive,<br><br>        Defendants. | Case No.: 2:13-cv-02191-GMN-CWH<br><br>**ORDER** |

Pending before the Court is a Motion for Partial Summary Judgment (ECF No. 16) filed by Plaintiff American Guarantee and Liability Insurance Company ("American Guarantee"). Defendant Ironshore Specialty Insurance Company ("Ironshore") filed a Response (ECF No. 18), and American Guarantee filed a Reply (ECF No. 19). For the reasons discussed below, American Guarantee's Motion for Partial Summary Judgment is **GRANTED**.

## I.     BACKGROUND

This case arises from a dispute over insurance coverage for various underlying suits in Nevada state court. (Second Am. Compl. ¶ 3, ECF No. 15). The underlying action at issue, *Garcia v. Centex Homes*, involves a class action suit between owners of individual residences (the "Owners") and the developers, contractors, and sellers of the individual residences, Centex Homes. (Underlying Compl. at 7, Ex.4 to Pl.'s Mot. for Partial Summ. J., ECF No. 16-4). In their complaint (the "Garcia Complaint"), the Owners allege "damages stemming from, among other items, defectively built roofs, leaking windows, dirt coming through windows, drywall cracking, stucco cracking, stucco staining, water and insect intrusion through foundation slabs,

and other poor workmanship." (*Id.*). In response to the Garcia Complaint, Centex Homes filed a Third Party Complaint, which alleged that subcontractors were responsible and liable for the claims asserted against it and named Champion Masonry ("Champion") as a Third Party Defendant. (Third Party Compl. at 12, 14–15, Ex. 5 to Pl.'s Mot. for Partial Summ. J., ECF No. 16-5).

American Guarantee is an insurance company that issued a commercial general liability policy, No. GLO5235922, to Champion for the policy period of May 31, 2001 to May 31, 2002. (Ex. 9 to Pl.'s Mot. for Partial Summ. J. at 2, ECF No. 16-9). Pursuant to that policy, American Guarantee provided a defense to Champion in the underlying state court construction defect action. (Second Am. Compl. ¶ 86).

Ironshore is also an insurance company and issued a commercial general liability policy, No. 011040905001, to Champion[1] for the policy period of May 31, 2009 to May 31, 2010 (the "Ironshore Policy"). (Ironshore Policy at 2, Ex. 3 to Pl.'s Mot. for Summ. J., ECF No. 16-3). The Ironshore Policy provides "that a defense is owed in any suit in which allegations were made of damages because of 'property damage' potentially caused by an 'occurrence,' occurring during the policy period and not otherwise excluded." (Second Am. Compl. ¶ 85).

Based on the Ironshore Policy, American Guarantee asserts three causes of action: (1) a declaratory judgment from the Court that Ironshore had a duty to defend Champion in the underlying action and the sum Ironshore must reimburse Plaintiffs; (2) contribution; and (3) indemnity. (*Id.* ¶¶ 73–97). In the instant motion, American Guarantee only seeks summary judgment as to a declaratory judgment from the Court that Ironshore had a duty to defend Champion in the underlying action. (Pl.'s Mot. for Summ. J. 5:2–7).

---

[1] The Ironshore policy was issued to Lukestar Corporation dba Champion Masonry.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and

the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

Under Nevada law, the duty to defend is broader than the duty to indemnify, and there is no duty to defend where there is no potential for coverage. *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1158 (Nev. 2004). "A potential for coverage only exists when there is arguable or possible coverage." *Id.* However, if there is any doubt as to whether the duty to defend arises, this doubt must be resolved in favor of the insured, and once the duty to defend arises, it continues throughout the course of the litigation. *Id.* "The purpose behind construing

the duty to defend so broadly is to prevent an insurer from evading its obligation to provide a defense for an insured without at least investigating the facts behind a complaint." *Id.* "Determining whether an insurer owes a duty to defend is achieved by comparing the allegations of the complaint with the terms of the policy." *Id.*

American Guarantee argues that Ironshore's duty to defend was triggered because the claims asserted in the Garcia Complaint were potentially covered and the Continuous or Progressive Injury or Damage exclusion under the Ironshore policy did not preclude all possible or arguable coverage.[2] (Pl.'s Mot. for Partial Summ. J. 10:21–23, 14:6–8). However, Ironshore contends that the Continuous or Progressive Injury or Damage exclusion applied and the exclusion's "sudden and accidental" exception was not implicated. (Response 13:7–15:2).

The Continuous or Progressive Injury or Damage exclusion precludes coverage of property damage "which first existed, or is alleged to have first existed, prior to the inception of this policy. 'Property damage' from 'your work', or the work of any additional insured, performed prior to policy inception will be deemed to have first existed prior to the policy inception, unless such 'property damage' is sudden and accidental and takes place within the policy period." (Ironshore Policy at 33, ECF No. 16-3). Ironshore argues that this exclusion applied because "undisputed and incontrovertible proof exists that all work on the residences in the *Garcia* action, including work performed by Champion, was completed many years before the Ironshore Policy inception date of May 31, 2009." (Response 14:5–9). Furthermore, Ironshore argues that the "sudden and accidental" exception to the exclusion is not implicated by the alleged property damage. (Response 14:15–15:2). The Court disagrees.

Based upon the allegations in the Garcia Complaint, the Court is not convinced that the Continuous or Progressive Injury or Damage exclusion precluded all possible or arguable

---

[2] The Court finds that all evidence attached to parties' briefing on the instant motion is properly authenticated under Federal Rule of Evidence 901. (*See, e.g.*, Affidavit of William Reeves, Ex. 1 to Pl.'s Mot. for Partial Summ. J., ECF No. 16-1).

coverage because the "sudden or accidental" exception could have been implicated.  For example, the Garcia Complaint alleged "damages stemming from, among other items, defectively built roofs, leaking windows, dirt coming through windows, drywall cracking, stucco cracking, stucco staining, water and insect intrusion through foundation slabs, and other poor workmanship." (Underlying Compl. at 7, ECF No. 16-4).  Moreover, the Garcia Complaint alleged that "[w]ithin the last year, Plaintiffs have discovered that the subject property has and is experiencing additional defective conditions, in particular, there are damages stemming from, among other items, defectively built roofs, leaking windows, dirt coming through windows, drywall cracking, stucco cracking, stucco staining, water and insect intrusion through foundation slabs, and other poor workmanship." (*Id.* at 8).  The Court finds that the Garcia Complaint is vague as to the temporal implications of the alleged damages, and therefore, it is not clear on the face of the Garcia Complaint whether the alleged damages were or were not sudden and accidental.  Accordingly, this exclusion alone did not preclude all possible or arguable coverage.

In conclusion, the exclusion asserted by Ironshore did not preclude all arguable or possible coverage under the Ironshore Policy.  Additionally, upon an independent comparison of the allegations in the Garcia Complaint with the terms of the Ironshore Policy, the Court finds that the Garcia Complaint alleged property damage potentially caused by an occurrence that took place within the policy period that could have led to possible or arguable coverage under the Ironshore Policy.  Accordingly, the Court declares that Ironshore had a duty to defend Champion in the underlying action.

/ / /

/ / /

/ / /

/ / /

IV.  **CONCLUSION**

**IT IS HEREBY ORDERED** that American Guarantee's Motion for Partial Summary Judgment (ECF No. 16) is **GRANTED**. American Guarantee's claim for declaratory judgment that Ironshore had a duty to defend Champion in the underlying action is **GRANTED**.

**DATED** this __30__ day of September, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Judge