William C. Reeves
State Bar No. 8235
MORALES FIERRO & REEVES
600 S. Tonopah Drive, Suite 300
Las Vegas, NV 89106
Telephone: 702/699-7822
Facsimile: 702/699-9455

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| ASSURANCE CO. OF AMERICA, et al. | ) | Case No.: 2:13-cv-02191-GMN-CWH |
| | ) | |
| Plaintiffs, | ) | ORDER RE: FINDINGS OF FACT AND |
| | ) | CONCLUSIONS OF LAW |
| vs. | ) | |
| | ) | |
| IRONSHORE SPECIALTY INS. CO., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This Court, having presided over a trial on the briefs in this matter and considering the evidence and argument of the parties, finds as follows:

<u>Findings of Fact</u>

Plaintiffs Assurance Company of America and Northern Insurance Company of New York (collectively "Zurich") are insurance companies with a common corporate parent. Dkt. No. 26, 1:20-26. Defendant Ironshore Specialty Insurance Company ("Ironshore") is also an insurance company. Dkt. No. 6, 1:28-2:3.[1] In this case, Zurich seeks contribution from Ironshore as to sums the former incurred in connection with the defense and settlement of underlying lawsuits.

I.     <u>Policies</u>

At issue in this case are lawsuits in which the following common insureds were named as

---

[1] Plaintiff American Guarantee and Liability Company ("American Guarantee") previously accepted an Offer of Judgment made by Ironshore. Dkt. No. 77. By virtue of this acceptance, a Consent Judgment was subsequently entered in favor of American Guarantee such that it is no longer a party to this action. Dkt. No. 79.

parties:

- Cedco, Inc. ("Cedco")
- Laird Whipple Concrete Construction, Inc. ("Laird Whipple")
- PR Construction Corp. ("PR Construction")
- Stewart & Sundell Concrete, Inc. ("Stewart & Sundell")
- Sunworld Landscape and Construction, LLC ("Sunworld")
- Universal Framing, LLC ("Universal Framing")

Zurich issued the following general liability insurance policies to Cedco:

- Policy No.: CON50022947 (effective 04/12/01-04/12/02); and
- Policy No.: CON50022947 (effective 04/12/02-04/12/03).

Exs. 1-2.

Zurich issued the following general liability insurance policies to Laird Whipple:

- Policy No.: SCP38949211 (effective 10/12/00-10/12/01).

Ex. 624.

Zurich issued the following general liability insurance policies to PR Construction:

- Policy No.: CON 33083339 (effective 08/01/99-08/01/00);
- Policy No.: CON 33083339 (effective 08/01/00-08/01/01); and
- Policy No.: CON 33083339 (effective 08/01/01-08/01/02).

Exs. 5-7.

Zurich issued the following general liability policies to Stewart & Sundell:

- Policy No.: 1849622 (effective 03/01/94-03/01/95)
- Policy No.: EPA24788847 (effective 03/01/95-03/01/96);
- Policy No.: EPA28258722 (effective 03/01/96-03/01/97);
- Policy No.: EPA30907464 (effective 03/01/97-03/01/98);
- Policy No.: EPA32604960 (effective 03/01/98-03/01/99);
- Policy No.: CON32604960 (effective 03/01/99-03/01/00);
- Policy No.: CON32604960 (effective 03/01/00-03/01/01); and
- Policy No.: CON32604960 (effective 03/01/01-03/01/02).

Exs. 11-18.

Zurich issued the following general liability policies to Sunworld:

•    Policy No.: CON98713598 (effective 05/16/01-05/16/02).

Ex 21.

Zurich issued the following commercial general liability policies to Universal Framing:

•    Policy No. SCP39574349 (effective 01/07/03-01/07/04);

•    Policy No. SCP39574349 (effective 01/07/04-01/07/05);

•    Policy No. SCP39574349 (effective 01/07/05-01/07/06); and

•    Policy No. SCP39574349 (effective 01/07/06-01/07/07).

Exs 24-27.

Ironshore issued Cedco the following general liability policies:

•    Policy No.: 018ER0905001 (effective 06/01/09-06/01/10); and

•    Policy No.: 00194200 (effective 04/01/10-04/01/11).

Exs. 4, 505.

Ironshore issued Laird Whipple the following general liability policies:

•    Policy No.: 017BW0905001 (effective 04/15/09-04/15/10); and

•    Policy No.: 000242101 (effective 04/15/10-04/15/11).

Exs. 8-9.

Ironshore issued PR Construction the following general liability policy:

•    Policy No.: 000115801 (effective 01/31/10-01/31/11).

Ex. 10.

Ironshore issued Stewart & Sundell the following commercial general liability policy:

•    Policy No.: 012A80905001 (effective 03/01/09-03/01/10);

•    Policy No.: 000167401 (effective 03/01/10-03/01/11).

Exs. 19-20.

Ironshore issued Sunworld the following policy:

•    Policy No.: 00GN10905001 (effective 06/04/09-06/04/10).

Ex. 22.

3

1    Finally, Ironshore issued Universal Framing the following policy:

2        •    Policy No.: 00T960905001 (effective 10/13/09-10/13/10).

3  Exs. 29.[2]

4    The policies Zurich and Ironshore issued include Commercial General Liability Coverage

5  Forms that generally provide as follows:

6    We will pay those sums that the insured becomes legally obligated to
     pay as damages because of … "property damage" to which this
7    insurance applies. We will have the right duty to defend the insured
     against any 'suit' seeking those damages. However, we will have no
8    duty to defend the insured against any "suit" seeking damages for …
     'property damage' to which this insurance does not apply… .
9
     b. This insurance applies to ... "property damage" only if:
10
     (1) The … "property damage" is caused by an "occurrence" ... [and]
11
     (2) The . . . "property damage" occurs during the policy period.
12
     . . .
13
     "Occurrence" means an accident, including continuous or repeated
14   exposure to substantially the same general harmful conditions.

15   . . .

16   "Property damage" means:

17   a. Physical injury to tangible property, including all resulting loss of
     use of that property.
18
19   The policies Zurich and Ironshore issued also provide as follows:

20   4. Other Insurance.

21   If other valid and collectible insurance is available to the insured for a
     loss we cover under Coverages A or B of this Coverage Part, our
22   obligations are limited as follows:

23   . . .

24   c. Method of Sharing

25   If all of the other insurance permits contribution by equal shares, we
     will follow this method also.  Under this approach each insurer
26

27  ───────────────────────
    [2] Ironshore issued also issued Policy No. 00T960805001 (effective 10/13/08-10/13/09).  Dkt. No. 28.  Unlike the later
    policy, the 2008-2009 policy includes a Designated Work endorsement barring coverage for work completed prior to
28  October 13, 2008.  Dkt. No. 28, p. 50.  Given the timing of the work at issue, this endorsement applies to bar coverage.

ORDER                                                    Case No.: 2:13-cv-02191-GMN-CWH

contributes equal amounts until it has paid its applicable limit
of insurance or none of the loss remains, whichever comes first.

Meanwhile, the policies only Ironshore issued  each include Continuous or Progressive

Injury Exclusion endorsements ("CP Exclusion") which provide in relevant part as follows:

This insurance does not apply to any … "property damage":

1. which first existed, or is alleged to have first existed, prior to the
inception of this policy. "Property damage" from "your work" ...
performed prior to policy inception will be deemed to have first
existed prior to the policy inception, unless such "property damage" is
sudden and accidental and takes place within the policy period; or

2. which was, or is alleged to have been, in the process of taking place
prior to the inception date of this policy, even if such . . . "property
damage" continued during this policy period; or

3. which is, or is alleged to be, of the same general nature or type as a
condition, circumstance or construction defect which resulted in . . .
"property damage" prior to the inception date of this policy.

II.    Underlying Matters

Cedco was named as a party to the following underlying matters:

- Bagley v. All Drywall and Paint, Clark County Case No. A620609 ("Bagley");

- Blasco v. Rhodes Design, Clark County Case No. A578060 ("Blasco"); and

- Ishihama v. Terravita Home Construction Co., Clark County Case No. A632302

  ("Ishihama").

Ex Nos. 47-52.

Laird Whipple was named as a party to the following underlying matters:

- Stacy v. American West Homes, Inc., Clark County Case No. A575959 ("Stacy");

- Cohen v. Nigro Desert Bloom, LLC, Clark County Case No. A591492 ("Cohen");

- Wright v. Carina Corp., Clark County Case No. A602989 ("Wright"); and

- Colford v. American West Homes, Inc., Clark County Case No. A593923

  ("Colford").

Exs. 53-57, 70-71, 74-75.

PR Construction was named as a party to the following underlying matter:

- Epstein Family Trust v. Westgate Properties, Clark County Case No. A624664

ORDER                                                              Case No.: 2:13-cv-02191-GMN-CWH

("Epstein").

Ex. 58-59.

Stewart & Sundell was named as a party to the following underlying matters:

- Aurora Glen HOA v. Pinnacle-Aurora II, LP, Clark County Case No. A605463 ("Aurora");
- Boyer v. PN II, Clark County Case No. A603841 ("Boyer");
- Mystic Bay HOA v. Richmond Amer. Homes, Clark County Case No. A611595 ("Mystic Bay"); and
- Torrey Pines HOA v. U.S. Home Corp., Clark County Case No. A571846 ("Torrey Pines").

Exs. 51-52, 68-69, 72-73, 655, 657.

Sunworld was named as a party to the following underlying matter:

- Evers v. Fairway Pointe, LLC, Clark County Case No. A614799 ("Evers").

Ex. 60-61.

Finally, Universal Framing was named as party to the following underlying matters:

- Macias v. DW Arnold, Inc., Washoe County Case No. CV10-02863; and
- Larkin v. Comfort Residential, Washoe County Case No. CV09-03256.

Exs. 64-67.

In response to tenders, Ironshore disclaimed coverage in connection with each of the underlying matters.

Zurich agreed to defend the mutual insureds in connection with each of the underlying matters, incurring a total of $291,804 based on the following:

| | |
|---|---|
| Aurora | $15,467 |
| Bagley | $20,181 |
| Blasco | $17,611 |
| Boyer | $6,139 |
| Cohen | $38,258 |
| Colford | $27,746 |

6

| | |
|---|---|
| Epstein | $9,129 |
| Evers | $42,494 |
| Ishihama | $14,222 |
| Larkin | $26,468 |
| Macias | $8,180 |
| Mystic Bay | $23,063 |
| Stacy | $21,705 |
| Torrey Pines | $4,262 |
| Wright | $16,159 |

Exs. 382-411.

Additionally, Zurich agreed to contribute toward settlements of the claims asserted against the insureds, reached in connection with each the underlying matters, incurring $862,890 based on the following contributions:

| | |
|---|---|
| Aurora | $22,222 |
| Bagley | $4,256 |
| Blasco | $183,000 |
| Boyer | $0 (waiver of costs) |
| Cohen | $40,000 |
| Colford | $100,000 |
| Epstein | $200 |
| Evers | $9,000 |
| Ishihama | $4,000 |
| Larkin | $50,000 |
| Macias | $225,000 |
| Mystic Bay | $76,000 |
| Stacy | $76,000 |
| Torrey Pines | $17,778 |
| Wright | $55,434 |

ORDER                                             Case No.: 2:13-cv-02191-GMN-CWH

Conclusions of Law

I.    This Court Has Already Held That Ironshore Improperly Denied Coverage In Connection
With Each Of The Underlying Lawsuits.

On September 30, 2014, this Court granted Plaintiffs' Motion for Partial Summary
Judgment, and declared that Defendant Ironshore had a duty to defend its insured, Champion
Masonry, in an underlying action styled Garcia v. Centex Homes (the Garcia Action).  Dkt. No. 27.
With respect to the Garcia Action, Ironshore denied a duty to defend its insured Champion
Masonry, asserting that the Continuous or Progressive Injury or Damage exclusion precluded all
possible coverage.  The Court found that the complaint in the Garcia Action alleged damages
potentially falling within the scope of the Ironshore Policy insuring agreement.  Dkt. No. 27.
Further, the complaint in Garcia was "vague as to the temporal implications of the alleged damages,
and therefore, it is not clear on the face of the Garcia Complaint whether the alleged damages were
or were not sudden and accidental."  Dkt. No. 27, 6:10-13.  Accordingly, this Court held that the
exclusion relied upon by Ironshore did not eliminate the potential for coverage under the Ironshore
policy and declared that Ironshore had a duty to defend Champion Masonry in the Garcia Action.
Dkt. No. 27, 7, 2-4.

Thereafter, the Parties filed cross-motions for summary judgment, putting at issue
Ironshore's duty to defend six (6) other insureds with respect to the balance of underlying actions,
all of which Ironshore had declined coverage.  In addressing these motions, this Court issued an
Order which again found that a potential for coverage existed with respect to each of the insureds in
each of the underlying actions and that the potential for coverage with respect to each was not
eliminated by the Ironshore progressive damage exclusion.  Dkt. No. 72.  In so doing, this Court
noted as follows:

> This case arises from a dispute between co-insurers over coverage for
> sixteen separate underlying construction defect suits in Nevada state
> court. . . .
>
> In each of these underlying cases, despite the fact that the insureds
> had commercial general liability policies with both Plaintiffs and
> Defendant Ironshore, they were defended and indemnified only by
> Plaintiffs. The insureds' policies with Defendant Ironshore afforded
> coverage between varying dates in the years 2009, 2010, and 2011. In

ORDER                                                          Case No.: 2:13-cv-02191-GMN-CWH

1
2
3
4
5

> each case, Defendant Ironshore issued a denial letter stating that the insured's work was completed prior to the onset of the policy, and therefore coverage was not triggered pursuant to the policy's "Continuous or Progressive Injury or Damage Exclusion." See, e.g., (Jan. 24, 2011, Cedco Denial Letter p. 2, ECF No. 55-6); (Champion Masonry Denial Letter p. 2, ECF No. 59). In the instant case, Plaintiffs allege that the claims were wrongly denied by Defendant Ironshore, and that Defendant Ironshore had a duty to defend and indemnify the insureds in each of the sixteen underlying actions.

6    Dkt. No. 72, 1:22-2:25.

7        Of significance, this Court ruled that Ironshore owed a duty to defend in connection with

8    each of the underlying matters. Dkt. No. 72, 7:5-15:6. This court noted that the allegations in seven

9    of the remaining sixteen underlying actions were identical to those made in the Garcia Action and,

10   as in Garcia, did not specify when the alleged property damage occurred and did not contain

11   sufficient allegations from which to conclude the damage was not sudden and accidental. Having

12   recognized that these allegations triggered Ironshore's duty to defend in Garcia, this Court held that

13   Ironshore also had a duty to defend in the seven identical actions. This Court then analyzed the

14   allegations in each of the remaining nine underlying actions and held that in each, allegations gave

15   rise to the possibility of coverage under the Ironshore policies, a possibility that was not eliminated

16   under the progressive damage exclusion, and that Ironshore's duty to defend was triggered in each.

17       In the cross motions, Ironshore argued that even if had a duty to defend in the underlying

18   actions, Plaintiffs failed to establish that Ironshore had a duty to indemnify the insureds. This Court

19   held that Ironshore mischaracterized the Plaintiffs' burden, as "where a nonparticipating co-insurer

20   is found to have a duty to defend in an already settled action, the insurer attempting to disclaim

21   coverage bears the burden of proving the applicability of any policy exclusions." Dkt. No. 72,

22   15:11-13. This Court went onto explain as follows:

23
24
25
26
27
28

> Therefore, the question at issue is not whether Plaintiffs have sufficiently shown that Defendant Ironshore had a duty to indemnify, but instead whether Defendant Ironshore has sufficiently shown that it lacked a duty to indemnify in the underlying cases due to the exclusions in its policies. As Defendant Ironshore has not presented evidence demonstrating that the property damage alleged in the sixteen underlying cases fell within its policy exclusions, it has failed to carry this burden, and its Motion for Summary Judgment will accordingly be denied as to Plaintiffs' contribution claims.

ORDER                                                          Case No.: 2:13-cv-02191-GMN-CWH

Dkt. No. 72, 16:7-13.

This Court ruled that Ironshore, by improperly failing to defend, bears the burden of proving that it lacked a duty to indemnify and that "Defendant Ironshore has not presented evidence demonstrating that the property damage alleged in the sixteen underlying cases fell within its policy exclusions." Dkt 72, 16:10-11.

In connection with a motion for reconsideration Ironshore filed, this Court reiterated its prior rulings, stating: "the Court found that Defendant Ironshore had a duty to defend its insureds in the underlying actions, and that Defendant Ironshore did not provide sufficient evidence for the Court to conclude that it lacked a duty to indemnify." Dkt No. 84, 3:3-6. The Court denied the motion for reconsideration, finding neither clear error nor manifest injustice in the reasoning of its previous order. The Court expounded on its ruling as follows:

> Additionally, the Court reiterates that Defendant Ironshore, as a nonparticipating co-insurer, bears the burden of demonstrating that the policy exclusion applies to each of the underlying actions. See, e.g., PMA Capital Ins. Co. v. Am. Safety Indem. Co., 695 F. Supp. 2d 1124, 1125 (E.D. Cal. 2010) ("Once a party claiming coverage shows a potential for coverage under the coinsurer's policy, the coinsurer must conclusively prove with undisputed evidence that no coverage existed under the policy."). In the context of this case, this means that Defendant Ironshore bears the burden of showing that the damage at issue was not: (1) "sudden and accidental"; (2) "in the process of taking place prior to the inception date of [the] policy"; or (3) "of the same general nature or type as a condition, circumstance or construction defect which resulted in 'bodily injury' or 'property damage' prior to the inception date of [the] policy." (Second Summary Judgment Order 8:1-14).

Dkt. No. 84, 4:22-25.

In summary, in prior rulings, this Court has concluded that:

1.    Ironshore owed a duty to defend as to each underlying lawsuit at issue in this case;

2.    Ironshore improperly denied coverage in connection with each of the underlying matters;

3.    Ironshore, as the nonparticipating co-insurer bears the burden of demonstrating that a policy exclusion eliminated coverage with respect to the duty to indemnify; and

4.    Ironshore failed to carry in its motions for summary judgment and reconsideration. Dkt. Nos. 27, 72, 84.

II.    Ironshore Has Not Met Its Burden Of Proving The Absence of Coverage.

Under Nevada law, "[a]n insurer . . . bears a duty to defend its insured whenever it ascertains facts which give rise to a potential for coverage under the policy." United Nat'l Ins. Co. v. Frontier Ins. Co., 99 P.3d 1153, 1158 (Nev. 2004).  When a duty to defend is shown, nonparticipating coinsurers are presumptively liable for both the costs of defense and settlement.  Safeco Ins. Co. v. Superior Court, 140 Cal.App.4th 874 (2006), Employers Ins. Co. of Wausau v. Lexington Ins. Co., 2014 WL 4187842 (C.D. Cal. 2014); Acceptance Ins. Co. v. American Safety Risk Retention Group, Inc., 2011 WL 3475305 (S.D. Cal. 2011).  By virtue of the settlement, the parties forgo their right to have liability established by a trier of fact as the settlement becomes presumptive evidence of the insured's  liability and the amount thereof.  Advent, Inc. v. National Union Fire Insurance Company of Pittsburgh, 2016 WL 7100489 (Cal. App. 2016); Westport Ins. Corp. v. Northern California Relief, 76 F.Supp.3d 869 (N.D. Cal. 2014); Assurance Co. of America v. National Fire & Marine Ins. Co., 2012 WL 1970017 (D. Nev. 2012).  By refusing to participate, therefore, the recalcitrant coinsurer waives the right to challenge the reasonableness of defense costs and amounts paid in settlement because any other rule would render meaningless the insured's right to settle. Great American Ins. Co. v. Sequoia Ins. Co., 2016 WL 844819 (C.D. Cal. 2016); Federal Ins. Co. v. National Union Fire Ins. Co. of Pittsburgh, PA, 2013 WL 1209665 (C.D. Cal. 2013).

When it is demonstrated that the non-participating insurer owed a duty to defend, the burden shifts to the non-participating insurer to prove the absence of coverage as the settling insurer need not prove actual coverage.  Valley Forge Ins. Co. v. Zurich American Ins. Co., 2014 WL 4980302 (N.D. Cal. 2014); Axis Surplus Ins. Co. v. Glencoe Ins. Ltd., 204 Cal.App.4th 1214 (2012).  The absence of coverage, therefore, constitutes an affirmative defense for which the non-participating insurer bears the burden of proof.  St. Paul Mercury Ins. Co. v. Mountain West Farm Bureau Mut. Ins. Co., 210 Cal.App.4th 645 (Cal. 2012); MGA Entertainment, Inc. v. Hartford Ins. Group, 2012 WL 628203 (C.D. Cal. 2012); PMA Capital Ins. Co. v. American Safety Indem. Co., 695 F.Supp.2d 1124 (E.D. Cal. 2010).

As the disclaiming insurer that improperly failed to defend, Ironshore bears the burden of proving the absence of coverage,  which  it  has  not  done based on the evidence admitted at trial.

ORDER                                                                                    Case No.: 2:13-cv-02191-GMN-CWH

Ironshore's main argument is that the CP exclusion included in all of its policies bars coverage. Ironshore, however, has failed to demonstrate that this exclusion applies to bar actual coverage.

Prong 1 of the CP Exclusion seeks to deem all damages arising from work completed before the inception of any of its policies as occurring outside of its policy period The exclusion, however, does not apply to sudden damages. Ironshore has presented no evidence regarding when any of the damages actually occurred, and therefore whether any of the damages occurred suddenly. Absent this evidence, Ironshore cannot meet its burden of proving that none of the damages occurred suddenly.[3]

A separate consideration is the fact that the provision deeming that all damages occur outside of its policy period runs counter to the coverage otherwise available under the policy, creating an inherent ambiguity. See Saarman Construction, Ltd v. Ironshore Specialty Ins. Co., 2016 WL 4411814 (N.D. Cal. 2016). This Court agrees that the deemer sentence included in the CP Exclusion runs counter to the purpose and intent of the policy, creating an inherent ambiguity.

Prong 2 of the CP Exclusion seeks to bar coverage for damages "which . . . are in the process of taking place prior to the inception date of this policy and continue[ ]" while Prong 3 seeks to bar coverage "which is, or is alleged to be, of the same general nature or type as a condition" as to damages which continue. At trial, Ironshore has failed to meet its burden of demonstrating that all damages at issue precede the inception of its policy and continue into its policy period. As the underlying lawsuits are largely silent as to the timing of the damages, no conclusive evidence exists regarding the timing of the damages. Given this, Ironshore cannot meet its burden.

The balance of arguments Ironshore asserts (i.e., purported known loss rule, "your work" exclusion) have been previously addressed by this Court and are unavailing.

Based on the foregoing, this Court concludes that Ironshore cannot meet its burden of proving the absence of actual coverage such that it is liable for both defense expenses and settlement payments Zurich has made.

---

[3] While prong 1 also requires that the damages result from an accident, this requirement already exists by virtue of the insuring agreement and its requirement that damages result from an "occurrence."

ORDER                                                                 Case No.: 2:13-cv-02191-GMN-CWH

III.     This Court Awards Zurich An Equal Share Of The Sums It Has Incurred.

Equitable contribution apportions costs among insurers when several insurers are obligated to indemnify or defend the same loss or claim and one insurer has paid more than its share of the loss or defended the action without any participation by the others.  Travelers Property Casualty Company of America v. Amica Mutual Ins. Co.,  2016 WL 317657 (D. Nev. 2016), citing Hudson Ins. Co. v. Colony Ins. Co., 624 F.3d 1264, 1267 (9th Cir. 2010).  Equitable contribution is implied by law and designed to prevent the potentially unfair result that would occur if the company to pay first were left to cover the entire loss, and therefore exists to ensure that one insurer does not profit at the expense of another.  Fireman's Fund Ins. Co. v. Maryland Cas. Co., 65 Cal. App. 4th 1279, 1296 (1998); Howard v. American Nat. Fire Ins. Co., 187 Cal.App.4th 498 (2010).

By virtue of the rulings made herein, this Court concludes that Zurich is entitled to contribution from Ironshore.

There is no fixed rule for allocating costs and expenses among primary insurers covering the same loss.  Evanston Ins. Co. v. Western Community Ins. Co., 2016 WL 1555706 (D. Nev. 2016); North American Specialty Ins. Co. v. National Fire & Marine Ins. Co., 2013 WL 1332205 (D. Nev. 2013).  Thus, allocation is a decision that ultimately rests in the discretion of the Court.  See Centennial Ins. Co. v. United States Fire Ins. Co., 88 Cal.App.4th 105 (2001); Maryland Casualty Co. v. Nationwide Mutual Ins. Co., 81 Cal.App.4th 1082, 1089 (2000).

The policies issued by both Zurich and Ironshore each include provisions which explicitly state that an equal share approach will be followed if the other available insurance which exists permits for contribution by equal shares.  Given this, the language of the policies themselves support an equal shares allocation, a model other Courts have followed.  See Harleysville Mut. Ins. Co. v. Hartford Cas. Ins. Co., 90 F.Supp.3d 526 (E.D.N.C. 2015) Travelers Indem. Co. of America v. AAA Waterproofing, 2014 WL 201726 (D. Colo. 2014); Residence Mut. Ins. Co. v. Travelers Idem. Co. of CT, 26 F.Supp.3d 965 (C.D. Cal. 2104); Carolina Cas. Ins. Co. v. Travelers Prop. Cas. Co., 90 F.Supp.3d 304 (D.N.J. 2014).

This Court is aware that there are various other allocation models, and that Courts in other jurisdictions have employed alternate models in allocating losses between insurers (i.e., number of

limits, "time on risk," etc.) based on the unique facts before them.  In this case, difficulty exists in employing alternate models as not only is the timing of the damages is unknown, the evidence provided this Court is unclear regarding when construction work was performed and or completed. For this reason, this Court declines to adopt a different approach.

Based on the foregoing, this Court concludes that fairness and equity weigh in favor of a equal shares approach.

The policies issued by both Zurich and Ironshore include deductible endorsements generally providing that any coverage obligation attaches in excess of certain sums.  Ironshore policies contain varying deductible amounts - $5,000 for Universal Framing, $25,000 for Stewart & Sundell and $10,000 for all other trades.  While Zurich's policies generally include lower amounts, payment records generally reflect that Zurich largely received payments back from insureds for any deductible amounts owing.

While the parties agree that deductible amounts may be considered by this Court in reaching an appropriate final allocation, they disagree as to how to do so.  Zurich takes the position that the deductible amount should be deducted from the gross amount since its payments offset against the deductible owing under the policies Ironshore issued.  Ironshore, in contrast,  argues that the deductible amount should be deducted from its net share.

This Court agrees with Zurich and concludes in equity that Zurich's payments offset against any deductible amount owing under the policies Ironshore issued such that any reduction applies to the gross amount incurred, and not Ironshore's net share.  See Continental Cas. Co. v. St. Paul Surplus Lines Ins. Co., 803 F.Supp.3d 1113 (E.D. Cal. 2011), citing Montgomery Ward & Co., Inc. v. Imperial Cas. & Indem. Co., 81 Cal.App.4th 356, 370 (2000) and holding that insurance can be used to offset against a deductible in another insurer's policy.

In applying these facts and law, this Court concludes that net amount incurred by Zurich, after reduction for deductibles, is $976,466 based on the following:

| Insured/Matter | Total Incurred | Deductible | Net Incurred |
|---|---|---|---|
| Cedco - Bagley | $24,437 | $10,000 | $14,437 |
| Cedco - Blasco | $200,611 | $10,000 | $190,611 |

14

ORDER

Case No.: 2:13-cv-02191-GMN-CWH

| | | | |
|---|---|---|---|
| Cedco - Ishihama | $18,222 | $10,000 | $8,222 |
| Laird - Cohen | $78,258 | $10,000 | $68,258 |
| Laird - Colford | $127,746 | $10,000 | $117,746 |
| Laird - Stacy | $97,705 | $10,000 | $87,705 |
| Laird - Wright | $71,593 | $10,000 | $61,593 |
| PR Constr. - Epstein | $9,329 | $10,000 | $0 |
| Stewart - Aurora | $37,689 | $25,000 | $12,689 |
| Stewart - Boyer | $6,139 | $25,000 | $0 |
| Stewart - Mystic Bay | $99,063 | $25,000 | $74,063 |
| Stewart - Torrey Pines | $22,040 | $25,000 | $0 |
| Sunworld - Evers | $51,494 | $10,000 | $41,494 |
| Universal - Macias | $233,180 | $5,000 | $228,180 |
| Universal Larkin | $76,468 | $5,000 | $71,468 |
| **Totals** | **$1,153,974** | | **$976,466** |

Based on an equal shares approach, this Court awards Zurich $488,233, constituting one half of $976,466, exclusive of any entitlement to prejudgment interest.

To the extent not directly addressed herein, this Court finds any other positions furthered by Ironshore to be unavailing, and therefore not impacting the rulings made herein.

**IT IS SO ORDERED.**

**DATED** this __12__ day of October, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Court